# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| In Re:<br><br>**THANE S. NEBEKER,**<br><br>                               Debtor. | **Bankruptcy Case<br>No. 21-40596-JMM** |
|---|---|
| **N2 PACKAGING SYSTEMS, LLC;<br>GREEN TECH INNOVATIONS, LLC,**<br><br>                               Plaintiffs,<br><br>v.<br><br>**THANE S. NEBEKER,**<br><br>                               Defendant. | **Adv. Proceeding<br>No. 22-08001-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

    Janine Reynard, JOHNSON MAY, Boise, Idaho, Attorney for Plaintiffs.

    Alexandra O. Caval, Twin Falls, Idaho, Attorney for Defendant.

MEMORANDUM OF DECISION–1

*Procedural History*

On October 13, 2021, Thane S. Nebeker ("Defendant") filed a chapter 7[1] bankruptcy petition. BK Doc. No. 1.[2] On January 4, 2022, Plaintiffs N2 Packaging Systems, LLC ("N2") and Green Tech Innovations, LLC ("Green Tech") (collectively, "Plaintiffs"), commenced this adversary proceeding seeking a determination that the debt owed to them by Defendant is nondischargeable. Doc. No. 1. Defendant thereafter filed a motion for a more definite statement which was withdrawn following the filing of an amended complaint. Doc. Nos. 6 & 8. Subsequently, Defendant filed a motion to dismiss counts 1, 2, 4, and 6 of the amended complaint, which was granted without prejudice following a hearing. Doc. Nos. 10, 13 & 14.

Plaintiffs filed a second amended complaint, after which Defendant filed the motion to dismiss presently at issue. Doc. Nos. 16 & 17. The Court heard oral argument on the motion on August 8, 2022, after which it took the matter under advisement. After considering the submissions and arguments of the parties, as well as the applicable law, this decision resolves the motion. Fed. R. Bankr. P. 7052; 9014.

*Facts Alleged in Second Amended Complaint*

N2 is an Arizona limited liability company specializing in packaging solutions that are marketed to third parties in the United States, Canada, and other countries.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] *In re Nebeker*, 21-40596-JMM. All docket entries referencing the main bankruptcy case will be referred to as "BK Doc. No." while all references to this adversary proceeding will be designated "Doc. No."

MEMORANDUM OF DECISION–2

Complaint[3] at ¶¶ 1 & 7.  Green Tech is also an Arizona limited liability company.  *Id.* at ¶ 2.  Defendant commenced employment with Green Tech on September 20, 2016.  *Id.* at ¶ 8.  In November 2017, N2 purchased Green Tech, and thereafter Green Tech was wholly owned by and operated under N2, and N2 was the sole member/parent company of Green Tech.  *Id*. at ¶¶ 2 & 9.

In 2018, Defendant became an employee of N2 following a transition of all Green Tech employees to N2.  *Id.* at ¶ 15.  Following this transition, Defendant's payroll, benefits, tax documents, and signature block reflected his employer was N2.  *Id.* at ¶¶ 15–17.

Both N2 and Green Tech have invested and expended resources to develop confidential information and trade secrets relating to their operation and management, and as a result, both entities hold and own trade secrets from which they derive actual or potential economic value.  *Id.* at ¶¶ 20–23.  For example, N2 developed a proprietary process for packing controlled substances using nitrogen and a hermetically sealed lined container with a modified atmosphere that includes child-resistant packaging and complies with international markets, including Canada.  *Id.* at ¶¶ 26–27.  Moreover, both entities have undertaken security measures to protect this confidential information, including entering into non-disclosure and confidentiality agreements with employees, clients, and vendors.  *Id.* at ¶¶ 24–25.

---

[3] In citing to the "Complaint" in this decision, the Court is referring to the Second Amended Complaint filed on June 2, 2022, found at Doc. No. 16.

MEMORANDUM OF DECISION–3

On or about January 1, 2018, Defendant executed an updated "Employment, Confidentiality, and Noncompetition Agreement" ("Emp. Agmt.") with Green Tech, and in return received a raise in his base salary, profit sharing, a contingent equity interest, and $500. *Id.* at ¶¶ 12 & 29. He executed the Emp. Agmt. in the "employment position of Operations Manager" for Green Tech "and the associated companies, entities and organizations" of Green Tech. *Id.* On this date and thereafter, N2 was an associated company, entity and organization of Green Tech. *Id.* at ¶ 13. Pertinent to the issues presented in this adversary proceeding, the Emp. Agmt. contains the following provisions:

> Section 6(a), "Employee acknowledges and agrees that, since the beginning of Employer's business operations, Employer has spent considerable time, money, and effort building and developing business plans, business processes and methods of operation, financial and operational information, marketing information, technologies, intellectual property, customers, and customer lists, contacts and referral sources, trade secrets, and goodwill and reputation (the "Business Interests"). Employee agrees that Employers' Business Interests are legitimate and should be protected."

> Section 6(b), "Employee acknowledges and agrees he is a person who, by reason of Employer's investment of time, money, trust, exposure to Employer's Confidential Information (more specifically defined below to include, but not limited to, technologies, intellectual property, business plans, business processes and methods of operation, and business relationships) during the course of employment has gained or will gain a high level of inside knowledge, influence, credibility, notoriety or reputation by reason of being an employee of Employer, and, as a result, has the ability to harm or threaten Employer's legitimate Business Interests."

> Section 6(c), in part, provides, "In order to protect Employer's Business Interests, and to preserve the Confidential Information defined immediately below, Employee and Employer agree as follows:

MEMORANDUM OF DECISION–4

>> (1) <u>Confidential Information</u>. All Employer's non-public information regarding Employer's business operation to include, not by way of limitation: business plans, business processes, methods of operation, product pricing, product pricing methodologies, business development strategies, intellectual property, financial information, customer lists and information, business relationships and other information, materials and documents developed by Employer, and information, materials and documents that constitute Employer's "trade secrets" ("Confidential Information"). Through Employee's employment, Employee is, will become acquainted with and contribute to Employer's Confidential Information.
>
>> (2) <u>Ownership of Confidential Information</u>. The Confidential Information shall at all times, and shall be and remain, the sole and exclusive property of Employer, inclusive of other companies and entities associated or affiliated to Employer and Employer's business. …
>
>> (3) <u>Nondisclosure of Confidential Information</u>. All Confidential Information shall be considered by Employee to be sensitive, confidential and proprietary in nature. Employee shall maintain the Confidential Information as completely confidential and secret at all times; and shall not, at any time, either during or subsequent to employment by Employer, directly or indirectly, use, disseminate, appropriate, disclose or divulge any Confidential Information to any person not then employed by employer[.]
>
>> (4) <u>Return of Confidential Information and Other Information</u>: All Confidential Information provided to Employee and all documents and things prepared by Employee in the course of Employee's employment, including but not necessarily limited to correspondence, manuals, letters, notes, lists, reports, flowcharts, computer programs, proposals, notebooks, planners, calendars, schedules, disks, data tapes, financial plans and information, business plans, and other documents and records, whether in hard copy, magnetic media, electronic, or otherwise, and any and all copies thereof, are the exclusive property of Employer[.]"

> Section 6(d) provides, in part, "… for a period of twenty four (24) consecutive months immediately following termination of Employee's employment for any reason, Employee will not, directly or indirectly … use[], disseminate[], appropriate[], disclose[] or divulge[] any Confidential Information; or … provide[] any services to or on behalf of any person,

MEMORANDUM OF DECISION–5

> business or entity, either as an independent contractor, consultant, or employee, that are the same as or similar to the services provided by Employee to Employer during the course of Employee's employment …; or … otherwise engage[] or become[s] interested (as owner, stockholder, partner, director, officer, consultant, member or creditor) in any business or operation directly or indirectly competitive to Employer in which Employer's Confidential Information and/or the services Employee provided to Employer during the course of Employee's employment with Employer are or may be utilized."

*Id.* at ¶ 28.

During the course of his employment with Green Tech, Defendant was introduced to and had access to confidential business operations, strategies, product development, and other information and processes of both Green Tech and N2. *Id.* at ¶ 30–31. He also was introduced and had access to such information while he was employed by N2. *Id.* at ¶ 32. He was entrusted with this information in his management role. *Id.* at ¶ 33.

As Plaintiffs' employee, Defendant was introduced to both current and prospective clients and customers, including N2 Pack Canada Inc. ("N2 Canada") and its partners, specifically Alejo "Alex" Abellan, Brendan Pogue, and Erick Marciniak. *Id.* at ¶ 34. Prior to August 2018, N2 and N2 Canada entered into an agreement creating a partnership in Canadian sales of N2 Canada's products, which agreement included confidentiality and non-misappropriation provisions. *Id.* at ¶ 35.

While an employee of N2, Defendant provided confidential information developed by Plaintiffs, as well as trade secret information belonging to N2, to N2 Canada in exchange for monetary gain. *Id.* at ¶¶ 38–39. This included information about product vendors, pricing, and details concerning internal research and development conducted by Green Tech and N2. *Id.* at ¶¶ 40–41. Defendant knew the information included trade

MEMORANDUM OF DECISION–6

secrets and was confidential. *Id.* at ¶ 42. He specifically instructed competitors about how to circumvent N2's patents and pending patents, which were developed through significant time and expense to Plaintiffs. *Id.* at ¶ 43–44.

On or about September 7, 2018, Defendant filed with the Idaho Secretary of State a Certificate of Assumed Business Name for an entity called D&E Solutions ("D&E"). *Id.* at ¶ 37. The following month, he resigned from employment with Plaintiffs, but continued to work into November 2018. *Id.* at ¶ 45. On December 4, 2018, Defendant formed Lucid Packaging, LLC ("Lucid"), and sometime that same month, N2 Canada formed a separate Canadian company called Nitrotin, Inc. ("Nitrotin"). *Id.* at ¶¶ 46–47.

Defendant began working with Nitrotin through Lucid after January 1, 2019. *Id.* at ¶ 51. Through Defendant, D&E and Lucid obtained confidential and/or trade secret information belonging to N2 and Green Tech. *Id.* at ¶ 50. Defendant provided N2 Canada and Nitrotin with confidential and trade secret information owned by N2 and Green Tech, and Nitrotin sought to directly compete with N2 in worldwide markets, interfering with the business expectancies of both N2 and Green Tech. *Id.* at ¶¶ 48; 51–55. In return, Nitrotin paid Defendant or Lucid at least $851,835.29, and Defendant's net profit was at least $69,517.36. *Id.* at ¶ 57. Both N2 and Green Tech lost business expectancies as a result of Defendant's conduct. *Id.* at ¶ 63.

Following Defendant's bankruptcy filing, Plaintiffs commenced this adversary proceeding seeking to have this debt declared nondischargeable.

MEMORANDUM OF DECISION–7

### *Standard on Motions to Dismiss*

Motions to dismiss for failure to state a claim upon which relief may be granted are governed by Civil Rule 12(b)(6), applicable in adversary proceedings pursuant to Rule 7012(b). An Idaho bankruptcy court has explained the standard to be applied in addressing such a motion:

> The purpose of such a motion is to "test a claim's legal sufficiency." *Beach v. Bank of Am. (In re Beach)*, 447 B.R. 313, 318 (Bankr. D. Idaho 2011) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). To survive a Rule 12(b)(6) motion, a complaint must plead sufficient facts, which when accepted as true, support a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is plausible so long as it is based on a cognizable legal theory and has sufficiently alleged facts to support that theory. *In re Beach*, 447 B.R. at 318 (citing *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988))).
>
> "[Under Civil Rule 12(b)(6)], the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cornelius v. DeLuca*, 709 F.Supp.2d 1003, 1017 (D. Idaho 2010) (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005)).

*Baker v. Nationstar Mort., LLC (In re Baker)*, 574 B.R. 184, 188 (Bankr. D. Idaho 2017) (quoting *Hillen v. City of Many Trees, LLC (In re CVAH, Inc.)*, 570 B.R. 816, 823-24 (Bankr. D. Idaho 2017)).

The Court uses a two-step approach for deciding whether a complaint meets the plausibility requirement. "First, the Court strips the complaint of legal conclusions and accepts as true all factual allegations made in the complaint, drawing all reasonable inferences in favor of the plaintiff." *Garriott v. Kootenai Hosp. Dist.*, No. 2:16-CV-

MEMORANDUM OF DECISION–8

00081-CWD, 2016 WL 3746470, at *3 (D. Idaho July 8, 2016) (citing *Iqbal*, 556 U.S. at 680); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir. 2011). Second, the Court analyzes the remaining factual allegations in the complaint to determine whether a plausible claim of entitlement to relief has been alleged. *Id.*

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Garriott*, 2016 WL 3746470 at *3 (citing *Twombly*, 550 U.S. at 556.) The plausibility standard is not akin to a "probability requirement," but requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557.) A dismissal under Civil Rule 12(b)(6) may therefore be based on either the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Tracht Gut, LLC v. Los Angeles Cnty. Treasurer (In re Tracht Gut)*, *LLC*, 836 F.3d 1146, 1150–51 (9th Cir. 2016).

*Analysis*

As the pending motion to dismiss concerns only Claims Two and Four, *see* Adv. Doc. No. 17, the Court will discuss only those two claims.

A.  Claim Two

Plaintiffs allege that the debt owed by Defendant to N2 is nondischargeable in Defendant's bankruptcy case pursuant to § 523(a)(4). Specifically, Plaintiffs allege that

MEMORANDUM OF DECISION–9

because N2 purchased Green Tech and Defendant became an N2 employee, then the Emp. Agmt. Defendant entered into with Green Tech was "expressly for the benefit of [Green Tech] and its associated companies, entities, and organizations, of which N2 [] is one." *Id.* at ¶ 82. N2 held confidential information and trade secrets, from which it derived economic benefit. Defendant allegedly appropriated this information and passed it on to a competitor, causing competitive and economic harm to N2. As such, Plaintiffs contend the debt owed to them stemming from Defendant's actions should be nondischargeable in Defendant's bankruptcy.

Section 523(a)(4) excepts from discharge debts for, as alleged here, embezzlement. Embezzlement, in the § 523(a)(4) context, is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *T Street LLC v. Jaques (In re Jaques),* 615 B.R. 608, (Bankr. D. Idaho 2020) (quoting *Transamerica Com. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991)). There are three elements required to prove embezzlement: "(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which it was entrusted; and (3) circumstances indicating fraud." *Jaques*, 615 B.R. at 637 (quoting *First Delaware Life Ins. Co. v. Wada (In re Wada),* 210 B.R. 572, 576 (9th Cir. BAP 1997)).

After jettisoning legal conclusions, accepting all factual allegations as true, and drawing all reasonable inferences in favor of Plaintiffs, the Court concludes that Claim Two, as plead, is not subject to dismissal. The root of Plaintiffs' allegation lies in the second element of § 523(a)(4), namely, the nonowner's appropriation of the property to a

MEMORANDUM OF DECISION–10

use other than that for which it was entrusted. This element necessarily requires a determination of the boundaries of any entrustment.

The Complaint defines the scope of the entrustment by reference to the Emp. Agmt. There is little question if Defendant had a duty to keep N2's information confidential according to the terms of the Emp. Agmt., but instead transferred it to a competitor with whom he intended to privately do business, then the claim of embezzlement under § 523(a)(4) would be plausible. The hinge pin is Defendant's duty to keep N2's information confidential pursuant to the Emp. Agmt. Two avenues must be considered. First, whether N2 is a third-party beneficiary of the Emp. Agmt., and second, whether circumstantial evidence supports an inference that the Emp. Agmt. may be enforced by N2.

In considering the plausibility of Plaintiffs' allegations, the Court bears in mind that under Idaho law, "[r]estrictive covenants not to compete in an employment contract, though enforceable, are disfavored and will be strictly construed against the employer." *Freiburger v. J-U-B Engineers, Inc.*, 141 Idaho 415, 419, 111 P.3d 100, 104 (2005) (citing *Stipp v. Wallace Plating, Inc.,* 96 Idaho 5, 6, 523 P.2d 822, 823 (1974); *Shakey's Inc. v. Martin,* 91 Idaho 758, 762, 430 P.2d 504, 508 (1967)). Idaho courts apply different standards of construction of the "reasonableness" of the covenant to different types of covenants. "Thus, restrictive covenants in contracts limiting an employee's natural right to pursue an occupation and thus support himself and his family will be strictly scrutinized." *Stipp*, 96 Idaho at 6, 523 P.2d at 823.

MEMORANDUM OF DECISION–11

In addition, "a covenant not to compete contained in an employment contract must be reasonable as applied to the employer, the employee, and the public." *Freiburger*, 141 Idaho at 420, 111 P.3d at 105 (citing *Stipp,* 96 Idaho at 6, 523 P.2d at 823; *Insurance Ctr., Inc. v. Taylor,* 94 Idaho 896, 899, 499 P.2d 1252, 1255 (1972); *Marshall v. Covington,* 81 Idaho 199, 203, 339 P.2d 504, 508 (1959); *McCandless v. Carpenter*, 123 Idaho 386, 390, 848 P.2d 444, 447 (Ct. App. 1993). The Idaho Supreme Court held that courts must "determine whether or not the clause is no more restrictive than necessary to protect the employer's legitimate business interests." *Freiburger,* 141 Idaho at 420, 111 P.3d at 105. The standard applied is that "a covenant not to compete is reasonable only if the covenant: (1) is not greater than is necessary to protect the employer in some legitimate business interest; (2) is not unduly harsh and oppressive to the employee; and (3) is not injurious to the public." *Freiburger,* 141 Idaho at 420, 111 P.3d at 105 (citing RESTATEMENT (SECOND) OF CONTRACTS § 188 (1981)).

*1. Third-Party Beneficiary Status*

Even through N2 is not directly named in the Emp. Agmt., if N2 can establish it is a third-party beneficiary of the document, N2 may have a right to enforce its terms, including the non-disclosure provisions. Idaho law provides that "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Idaho Code § 29–102. Interpreting that statute, the Idaho Supreme Court observed:

> Under Idaho law [Idaho Code § 29–102], if a party can demonstrate that a contract was made expressly for its benefit, it may enforce that contract, prior to rescission, as a third-party beneficiary. The test for determining a

MEMORANDUM OF DECISION–12

party's status as a third-party beneficiary capable of properly invoking the protection of Idaho Code § 29–102, is whether the agreement reflects an intent to benefit the third party. The third party must show that the contract was made primarily for his benefit, and that it is not sufficient that he be a mere incidental beneficiary. Further, the contract itself must express an intent to benefit the third party. This intent must be gleaned from the contract itself unless that document is ambiguous, whereupon the circumstances surrounding its formation may be considered ... a party must show that the contract was made for its direct benefit, and that it is not merely an indirect beneficiary.

*De Groot*, 157 Idaho at 562, 338 P.3d at 541 (quoting *Idaho Power Co. v. Hulet,* 140 Idaho 110, 112–13, 90 P.3d 335, 337–38 (2004)) (emphasis omitted).

The Emp. Agmt. defines the term "Employer" as Green Tech, and defines Defendant's employment status in this way: "Employer employs Employee, and Employee shall work for Employer, in the employment position of Operations Manager of Employer and the associated companies, entities and organizations of Employer and Employer's business operations."  Emp. Agmt., Doc. No. 12.[4]

The Emp. Agmt. defines what information is deemed confidential and requires employees to "maintain the Confidential Information as completely confidential and secret at all times," and prohibits the employee from "directly or indirectly, us[ing], disseminat[ing], appropriate[ing], disclos[ing] or divulge[ing] any Confidential

---

[4] "It is well-settled that when considering a Civil Rule 12(b)(6) challenge, a court normally cannot consider documents outside the complaint without converting it into a motion for summary judgment." *Davis v. Minnesota Life Ins. Co.*, 497 F. Supp. 3d 958, 962 (D. Idaho 2020); Civil Rule 12(d). That being said, "a court can consider documents attached to a motion to dismiss if they 'are referred to in the plaintiff's complaint and are central to his claim.'" *Id.* at 962–63 (quoting *City of Inglewood v. Teixeira*, No. CV-15-01815-MWF (MRWX), 2015 WL 5025839, at *2 (C.D. Cal. Aug. 20, 2015)).  In this case, Plaintiffs attached the complete employment agreement to their objection to the first motion to dismiss filed in the case. Doc. No. 12. Because the Complaint references the employment agreement, the Court may consider its text without converting this motion to dismiss to one for summary judgment.

MEMORANDUM OF DECISION–13

Information to any person not then employed by Employer." Complaint, Doc. No. 16 at ¶ 28. This requirement extends both "during or subsequent to" Defendant's employment. *Id.*

Defendant contends that N2 was not a third-party beneficiary of the Emp. Agmt., and therefore cannot base a claim of embezzlement on it. Plaintiffs attempt to establish this fact by alleging in the Complaint that "N2 Packaging was a direct and/or third-party beneficiary of the Employment Agreement." *Id.* at ¶ 14. However, that statement constitutes a legal conclusion, which the Court need not accept as true when considering a motion to dismiss. *Whitaker v. Tesla Motors, Inc.,* 985 F.3d 1173, 1176 (9th Cir. 2021). The Complaint further alleges that following Defendant's transition, along with all Green Tech employees, to employment with N2 in 2018, "Defendant knew and understood that he was working for N2, and all agreements he entered into pursuant to his employment were for the benefit of N2, regardless of whether his employer was listed as N2 or Green Tech." Complaint, Doc. No. 16 at ¶¶ 18–19. Even if the Court accepts that statement as true for the purposes of this motion to dismiss, such "understanding" does not create third-party beneficiary status for N2, but rather elucidates Defendant's state of mind.

Instead, for N2 to enforce the Emp. Agmt., the agreement must express the intent to directly benefit N2. The text of the document establishes neither an intent to benefit N2, nor that the Emp. Agmt. was made primarily for its benefit. As such, the facts alleged do not support an inference that N2 was a third-party beneficiary of the Emp. Agmt. Accordingly, to the extent Plaintiffs rely on third-party beneficiary status to

MEMORANDUM OF DECISION–14

establish N2's right to enforce the terms of the Emp. Agmt., the Court concludes Plaintiffs have not asserted a plausible claim that Defendant appropriated N2's property to a use other than that for which it was entrusted.

There is, however, a second path by which Plaintiffs may potentially establish that N2 was a third-party beneficiary of the Emp. Agmt. and had the right to enforce its terms.

2. *Circumstantial Evidence that N2 May Enforce Emp. Agmt.*

Before the Court may consider any circumstantial evidence surrounding the Emp. Agmt., it must first consider the language of the agreement itself. This is because the Court may not consider any circumstantial evidence unless the Emp. Agmt. is "sufficiently ambiguous to the extent that it would be appropriate to examine such surrounding circumstances." *De Groot v. Standley Trenching, Inc.*, 157 Idaho 557, 563, 338 P.3d 536, 542 (2014). The provision at issue states:

> 1. Duties and Responsibilities. Employer employs Employee, and Employee shall work for Employer, in the employment position of Operations Manager of Employer and the associated companies, entities and organizations of Employer and Employer's business operations.

Emp. Agmt. at Doc. No. 12.

The Emp. Agmt. is not a model of clarity. One possible reading of this provision is that Defendant's "Employer" included "the associated companies, entities and organizations of Employer…." On the other hand, the provision could be read that Defendant works for Green Tech as his "Employer" but holds the position of Operations Manager for Green Tech as well as associated companies, entities and organizations.

MEMORANDUM OF DECISION–15

Because of this ambiguity, the Court may consider the circumstances surrounding the execution of the Emp. Agmt.

The Complaint alleges that at the time Defendant executed the Emp. Agmt., N2 had recently purchased Green Tech. It further alleges that, at some point during 2018, Defendant became an employee of N2.[5] Using this circumstantial evidence and drawing all reasonable inferences in Plaintiffs' favor, it is plausible that N2 could be included as one of the "associated companies, entities and organizations of Employer," and therefore could plausibly have third-party beneficiary status under the agreement. As the Emp. Agmt. defines what information is confidential as well as the boundaries of entrustment, Plaintiffs' § 523(a)(4) argument is plausible. Accordingly, Defendant's motion to dismiss Count Two will be denied.

Finally, in their brief in opposition to the motion to dismiss, Plaintiffs contend that when Defendant became an employee of N2 in 2018, N2 then "had an expectation that its confidential information and trade secrets would not be disclosed by Defendant outside the scope of his employment for Defendant's own monetary gain." Doc. No. 19 at p. 3. Plaintiffs go on to argue that they "are not aware of any requirement that an employer can only seek to protect its trade secret information through a written agreement with its employees." *Id.* What Plaintiffs fail to articulate, however, is on what basis N2 may enforce such an expectation. Recall, a claim is plausible "so long as it is based on a

---

[5] The Complaint is unclear about when Defendant transitioned to an N2 employee. *See* Complaint, Doc. No. 16 at ¶ 15. Since Defendant signed the Emp. Agmt. on January 1, 2018, the Court presumes the formal transition to employment with N2 occurred after that date.

MEMORANDUM OF DECISION–16

*cognizable legal theory* and has sufficiently alleged facts to support that theory. *Baker*, 574 B.R. at 188 (emphasis added). Without a clearer explanation of the legal underpinnings of this argument, the Court cannot determine whether it is plausible enough to survive a motion to dismiss. While the Court can make inferences in Plaintiffs' favor, it cannot infer legal arguments not clearly articulated. The Court has already held that the Plaintiffs' claim under Claim Two based on embezzlement, related to the duties imposed on the Defendant by the Emp. Agmt., survives dismissal. If Plaintiffs are attempting to articulate a claim that is based on a theory other than embezzlement related to the duties imposed by the Emp. Agmt. under § 523(a)(4), then Defendant's motion to dismiss on this basis is granted without prejudice, with leave to file an amended complaint within 21 days of the date of this decision.

B.  Claim Four

Plaintiffs also contend the debt owed by Defendant to N2 is nondischargeable in Defendant's bankruptcy case pursuant to § 523(a)(6). Specifically, Plaintiffs allege that Defendant knew N2 had a contract with N2 Canada and that the confidential information and services he provided to N2 Canada "was in direct conflict with his Employment Agreement with [Green Tech] and [Green Tech's] parent company, N2." Complaint at ¶¶ 108–09. Moreover, Plaintiffs assert that by his actions, Defendant intentionally and wrongfully appropriated opportunities and funds for himself, causing injury to N2, and that he knew that providing this confidential information would result, or was substantially certain to result, in injury to N2. Complaint at ¶¶ 112–16. As such,

MEMORANDUM OF DECISION–17

Plaintiffs argue the debt owed to them stemming from Defendant's actions should be nondischargeable in Defendant's bankruptcy under § 523(a)(6).

Section 523(a)(6) provides that any debt for willful and malicious injury by the debtor to another entity or to the property of another entity is excepted from discharge. Plaintiffs must show both that the Defendant's conduct in inflicting injury on N2 was willful, and separately, that his actions inflicting the injury were malicious. *Herrera v. Scott (In re Scott),* 588 B.R. 122, 130–31 (Bankr. D. Idaho 2018) (citing *Torres v. Nicholas (In re Nicholas)*, 556 B.R. 465, 472–73 (Bankr. D. Idaho 2016) (citing *Masuo v. Galan (In re Galan)*, 12.1 IBCR 5, 7 (Bankr. D. Idaho 2012))).

The willfulness requirement is met "when the debtor believes that injury is substantially certain to result from his own conduct." *Scott,* 588 B.R. at 130 (quoting *Ormsby v. First Am. Title Co. of Nevada (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010) (quoting *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002))). This Court may consider circumstantial evidence that tends to show what Defendant knew when taking the injury-producing action. *Carrillo,* 290 F.3d at 1146 n.6. Here, regardless of the applicability of the Emp. Agmt. to N2, it is plausible that Defendant might have believed that, if his endeavors were successful, competing directly with N2 would be substantially certain to economically injure N2. Therefore, the first prong of the analysis is plausible.

The second requirement, however, relies on the applicability of the Emp. Agmt. to N2. This portion of the § 523(a)(6) analysis requires proof that Defendant's actions were malicious. "[A] malicious injury involves (1) a wrongful act, (2) done intentionally, (3)

MEMORANDUM OF DECISION–18

which necessarily causes injury, and (4) is done without just cause or excuse." *Ormsby,* 591 F.3d at 1207 (quoting *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001)). The wrongful act must be committed intentionally, rather than the injury itself. *Scott,* 588 B.R. at 130 (citing *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997)).

The crux of Plaintiffs' case lies in the wrongfulness of Defendant's actions. Absent an enforceable non-disclosure and/or non-compete agreement, Defendant's endeavors to set up a company to compete directly with his employer are not necessarily wrongful, despite displaying a decided lack of loyalty.[6] Because the Court has found sufficient ambiguity exists within the Emp. Agmt. to permit consideration of circumstantial evidence that N2 is an intended third-party beneficiary under the Emp. Agmt., providing a plausible legal basis for N2's enforcement of the terms of the Emp. Agmt., Plaintiffs' allegation that Defendant's actions were wrongful toward N2 are plausible. Accordingly, Plaintiffs' allegations under § 523(a)(6) are sufficiently plausible to survive Defendant's motion to dismiss.

### *Conclusion*

The Court has accepted as true all factual allegations made in the Complaint and has drawn all reasonable inferences in Plaintiffs' favor, and concludes that, if reliant on the employment agreement, Claims Two and Four state plausible claims of relief under §§ 523(a)(4) and (a)(6). To the extent Plaintiffs' claims rely on some other legal theory

---

[6] Again, should Plaintiffs have a separate legal theory they wish to articulate, they must clearly do so.

MEMORANDUM OF DECISION–19

besides the Emp. Agmt. by which they seek to protect N2's trade secret information, they have not sufficiently articulated their claims and Defendant's motion to dismiss will be granted without prejudice. Plaintiffs shall have 21 days from the date of this decision in which to amend their complaint to articulate this claim.

A separate order will be entered.



DATED: September 23, 2022

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION–20